## COMMONWEALTH vs. DONNA SHEA.

Norfolk. January 7, 2014. - April 14, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Protective Order. Abuse Prevention. Practice, Criminal,* Instructions to jury, Contempt, Law of the case. *Intent. Statute.*

This court concluded that G. L. c. 209A, §§ 5A and 7, govern the violation in Massachusetts of an out-of-State abuse protection order and therefore the jury should be instructed in accordance with Massachusetts law; accordingly, at the trial of a criminal complaint charging the violation in Massachusetts of a New Hampshire abuse protection order, the District Court judge did not err in instructing the jury on the requirements of proof under Massachusetts law. [790-793]

At the trial of a criminal complaint charging the violation in Massachusetts of a New Hampshire abuse protection order, a District Court judge's erroneous jury instruction, which did not adequately instruct the jury that the Commonwealth must prove beyond a reasonable doubt that the defendant's alleged encounter with the victim did not occur by accident, did not create a substantial risk of a miscarriage of justice where, in the circumstances, the judge's adequate instruction on incidental contact cured any prejudice arising from the error [793-797]; further, no substantial risk of a miscarriage of justice arose from the absence of an instruction on specific unanimity, where the spatial and temporal separation between the two incidents (of the defendant's contact with the victim) were short [797-798].

COMPLAINT received and sworn to in the Quincy Division of the District Court Department on May 11, 2010.

The case was tried before *Robert P. Ziemian*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jin-Ho King* for the defendant.

*Pamela Alford*, Assistant District Attorney, for the Commonwealth.

GANTS, J. A District Court jury convicted the defendant, Donna Shea, of violating a protection order issued by a judge in

New Hampshire, which is a crime under G. L. c. 209A, § 7.[1] The primary issue presented on appeal is whether the judge was correct in using Massachusetts law, rather than the law of New Hampshire, to instruct the jury regarding the intent required for a finding of a violation of the protection order. Given that G. L. c. 209A, § 5A, requires that a protection order issued by another jurisdiction be "enforced as if it were issued in the commonwealth," we conclude that Massachusetts law governs the violation of such protection orders where the violation occurred in Massachusetts. We also conclude that no substantial risk of a miscarriage of justice arose with regard to the instructions to the jury.

*Background.* We briefly summarize the evidence at trial. The victim, Christine Frawley, is the widow of the defendant's nephew.[2] The victim applied for a restraining order against the defendant from a court in New Hampshire, where the victim lived, because she "was in fear for [her] life and [her] children's lives." At the hearing on March 30, 2010, at which the defendant failed to appear despite receiving notice, the judge issued an order of protection on behalf of the victim against the defendant, which was effective until March 29, 2011. The protection order prohibited the defendant, among other things, from abusing the victim, having any contact with her, and coming within one hundred yards of her. The defendant was served with the protective order at her residence in Weymouth on April 5, 2010.

Less than one month later, the defendant sought a temporary abuse protection order against the victim in the Quincy Division of the District Court Department pursuant to G. L. c. 209A. The judge issued a temporary restraining order, and scheduled an evidentiary hearing on May 7, 2010. At the hearing, after listening to both parties, the judge denied the defendant's application for an abuse protection order. After learning of the denial, the defendant stated to the judge, "Restraining orders don't work." At the conclusion of the hearing, the court officer directed the victim to remain in the court room while he escorted the defendant out. As the defendant was leaving, she stopped in

---

[1]The jury found the defendant not guilty of witness intimidation.

[2]The defendant testified at trial that her nephew lived with her family for approximately ten years, and that "he was raised as [her] child."

front of the victim and repeated, "Restraining orders don't work."[3] The victim remained seated in the court room "probably not even a minute" when the court officer returned and escorted the victim out of the court room and to the stairwell. There, the victim encountered the defendant, who was "hiding" behind the open stairwell door. The defendant appeared to take a photograph of the victim with her cellular telephone, and stated, "Now everyone will know who you are," before "she went flying down the stairs."[4,5] A complaint issued in the District Court charging the defendant with, inter alia, violating the New Hampshire abuse protection order, as prohibited by G. L. c. 209A, § 7.

After her conviction and sentencing,[6] the defendant appealed and we transferred the appeal to this court on our own motion.

*Discussion.* The defendant argues three issues on appeal. First, as noted earlier, she contends that the judge erred by not instructing the jury as to the intent required under New Hampshire law to find a defendant guilty of violating a protection order. Second, she claims that the judge failed adequately to instruct the jury that they should find the defendant not guilty unless the Commonwealth proved beyond a reasonable doubt that the defendant's alleged contact with the victim did not occur by accident. Third, she argues that, where separate criminal incidents were alleged, the judge should have instructed the jury on the requirement of specific unanimity. Because the defendant did

---

[3]The defendant admitted at trial that when the judge denied her application for the order, she had said that "restraining orders are a joke" and "don't work anyway," but testified that she then had walked out of the court room.

[4]The victim also testified at trial that the defendant said, "Now everyone is going to know what you look like."

[5]The defendant testified at trial that, when she left the court room, she immediately returned a text message from her daughter using her cellular telephone. When she realized that "any minute [the victim] would be walking out of the court room," she moved further from the court room door and stood in the hallway of the nearby stairwell, continuing to send a text message to her daughter. She then heard the victim say "something about a picture." The defendant testified that her cellular telephone was not capable of taking photographs.

[6]The defendant was sentenced to two years' supervised probation, with special conditions that she stay away from and have no contact with the victim, stay at least one hundred yards away from the victim's residence, and complete an anger management program.

not object at trial to the judge's jury instructions, we determine if any of the alleged errors "created a substantial risk of a miscarriage of justice." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 (1999).

1. *Law governing violation of protection order issued by another jurisdiction.* General Laws c. 209A, § 5A, provides, in pertinent part, that "[a]ny protection order issued by another jurisdiction, as defined in [G. L. c. 209A, § 1], shall be given full faith and credit throughout the commonwealth and enforced as if it were issued in the commonwealth for as long as the order is in effect in the issuing jurisdiction."[7] "Any violation of . . . a protection order issued by another jurisdiction" is a crime. G. L. c. 209A, § 7. These provisions were enacted by the Legislature in 1996, following the enactment of Title II of the Violence Against Women Act, 18 U.S.C. § 2265 (1994) (VAWA), which requires that each jurisdiction give full faith and credit to abuse protection orders entered by courts of other jurisdictions. See C.P. Kindregan, Jr., M. McBrien, & P.A. Kindregan, Family Law and Practice § 78:1 (4th ed. 2013).

The New Hampshire protection order obtained by the victim was issued pursuant to N.H. Rev. Stat. Ann. § 633:3-a (2005), which prohibits the "stalking" of a person, and therefore is a "protection order issued by another jurisdiction" under G. L. 209A, § 7. Under New Hampshire law a person is "guilty of a Class A misdemeanor if such person knowingly violates a protective order" issued under its stalking statute. See N.H. Rev. Stat. Ann. § 633:3-a, par. III-a; N.H. Rev. Stat. Ann. § 173-B:9, par. III (2002). "A person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such nature or that such circumstances exist." N.H. Rev. Stat. Ann. § 626:2, par. II(b) (2005).

If the defendant had violated the protection order in New

---

[7]General Laws c. 209A, § 1, defines "protection order issued by another jurisdiction" as "any injunction or other order issued by a court of another state . . . that is issued for the purpose of preventing violent or threatening acts or harassment against, or contact or communication with or physical proximity to another person, including temporary and final orders issued by civil and criminal courts filed by or on behalf of a person seeking protection."

Hampshire, she could not be convicted of its violation unless the jury found beyond a reasonable doubt that she had "knowingly" violated the order, as defined under New Hampshire law. The defendant contends that the same standard should apply where the alleged violation occurred in Massachusetts. The choice of law matters because, as will be discussed in more detail *infra*, under Massachusetts law, the Commonwealth need not prove a knowing violation of a protection order; instead, the Commonwealth bears the burden of proving, beyond a reasonable doubt, that the defendant knew that the relevant terms of the order were in effect and, where the evidence fairly raises the issue, that the violation was not accidental or incidental to lawful activity. See *Commonwealth* v. *Finase*, 435 Mass. 310, 315 (2001); *Commonwealth* v. *Silva*, 431 Mass. 194, 198 (2000); *Commonwealth* v. *Delaney*, 425 Mass. 587, 595-596 (1997), cert. denied, 522 U.S. 1058 (1998); *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. 488, 492 (2002).

The question of which jurisdiction's law applies to a violation of a protection order appears to be one of first impression. The parties have cited no case, in Massachusetts or anywhere in the United States, that has decided this issue, and we have found none. We conclude that, where an out-of-State abuse protection order is allegedly violated in Massachusetts and prosecuted under c. 209A, the violation is governed by Massachusetts law and the jury should be instructed in accordance with Massachusetts law.

Had the protective order in this case been issued in Massachusetts and allegedly violated in Massachusetts, its violation would plainly be governed by Massachusetts law. Where, under G. L. c. 209A, § 5A, a New Hampshire order must be "enforced as if it were issued in the commonwealth," the alleged violation of the order in Massachusetts must also be governed by Massachusetts law. See Sack, Domestic Violence Across State Lines: The Full Faith and Credit Clause, Congressional Power, and the Interstate Enforcement of Protection Orders, 98 Nw. U. L. Rev. 827, 839 (2004) (under VAWA, "the definition of what constitutes a violation is determined by the law of the enforcing state"). See also Klein, Full Faith and Credit: Interstate Enforcement of Protection Orders Under the Violence Against Women Act of 1994, 29 Fam. L.Q. 253, 257 (1995) (under VAWA,

enforcing State applies its own law to violation of out-of-State order). Therefore, the law of Massachusetts determines whether a person prosecuted under G. L. c. 209A, § 7, has violated a protection order in Massachusetts, regardless of whether the protection order is issued in Massachusetts or in another jurisdiction. The judge did not err by instructing the jury regarding the requirements of proof under Massachusetts law.

2. *Inadequacy of the accident instruction.* The defendant contends that, where she testified that she encountered the victim by accident in the stairwell of the court house, the judge failed adequately to instruct the jury that the Commonwealth must prove beyond a reasonable doubt that the alleged encounter did not occur by accident. The defendant is correct that she was entitled to such an instruction in the circumstances of this case and that the instruction the judge provided regarding accident was inadequate.[8] To determine whether the inadequate instruction created a substantial risk of a miscarriage of justice, we

---

[8]The judge provided the following instruction regarding accident: "Now, when we talk about this statute, however, a couple of other things, accidental conduct — contact, and accidental is accidental so there has to be intent to — to appear where the defendant is — I mean where the plaintiff is on part of the defendant in this case."

The judge regrettably did not instruct in accordance with Instruction 6.720(2) of the Model Jury Instructions for Use in the District Court (2011), which provides in part:

> "If there is evidence that suggests that the alleged contact may have occurred by accident, the Commonwealth must prove one of two things beyond a reasonable doubt: either that the alleged contact did not occur by accident or, if it did occur by accident, that the defendant failed to take reasonable steps to end the accidental contact.
>
> "An accident is an unexpected happening that occurs without intention or design on a person's part. A contact was accidental if the defendant did not have reason to know or believe that [the victim] would be present at that time or place.
>
> ". . .
>
> "So if the evidence raises the possibility that the defendant did not know or could not reasonably have known that [the victim] would be present at the time and place alleged, then the Commonwealth must prove beyond a reasonable doubt either that the contact was *not* accidental or, if it was accidental, that the defendant failed to take reasonable steps to end it" (emphasis in original).

must first examine the requirements of proof in a case alleging violation of an abuse protection order, in violation of G. L. c. 209A, § 7.

To prove a defendant guilty of such a violation, the Commonwealth must prove four elements beyond a reasonable doubt: (1) that a court had issued an abuse protection order; (2) that the order was in effect on the date when its violation allegedly occurred; (3) that the defendant knew the relevant terms of the order were in effect, either by having received a copy of the order or by having learned of the terms of the order in some other way; and (4) that the defendant violated a term of the order. See *Commonwealth* v. *Delaney*, 425 Mass. at 595-596; *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. at 492. See generally Instruction 6.720 of the Model Jury Instructions for Use in the District Court (2011).

However, where the term of the order allegedly violated was to have no contact with the protected party, and where there is evidence that the alleged contact may have occurred by accident, or that it was incidental to a legitimate, lawful activity such as attending a court hearing, there is a fifth requirement of proof: the Commonwealth must prove beyond a reasonable doubt that the contact was not accidental (or that the defendant did not take reasonable steps to end an accidental contact), or that the contact was not incidental to the defendant's legitimate and lawful attendance at the court hearing. See *Commonwealth* v. *Kendrick*, 446 Mass. 72, 76 (2006) ("Happening on a protected person whom one did not, and could not reasonably, know to be present is not a violation, but the party subject to the order must end the encounter by leaving"); *Commonwealth* v. *Finase*, 435 Mass. at 315 (absent contrary indication from Legislature, court will assume that Legislature did not intend to make accidents and mistakes crimes); *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. at 493 ("defendant cannot be convicted of violating a 'no contact' order issued under c. 209A where the contact occurs in circumstances where the defendant did not know, and could not reasonably have been expected to know, that the protected person would be present"). See generally Instruction

6.720(2) and (3) of the Model Jury Instructions for Use in the District Court, *supra.*[9]

Here, where the defendant testified that she stepped into the stairwell while sending a text message to her daughter to avoid encountering the victim when she left the court room, the Commonwealth bore the burden of proving that the defendant's contact with the victim was not accidental or that, if accidental, the defendant did not take reasonable steps to end the contact. But in the circumstances of this case, if the defendant acted as she testified, her presence in the stairwell would also be incidental to her earlier legitimate and lawful attendance at the court hearing. Although the judge did not provide an adequate instruction regarding accident, his instruction to the jury regarding incidental contact was more than adequate and closely reflected the District Court's model instruction regarding incidental contact. See Instruction 6.720(3) of the Model Jury Instructions for Use in the District Court, *supra.*[10]

---

[9]There is also a fifth requirement of proof where there is evidence that the conduct of the defendant that is alleged to have violated the abuse protection order may have resulted from the action of a third party, such as where a passenger in an automobile allegedly violates an order to stay a certain distance from the protected person's home. In such cases, the Commonwealth must prove beyond a reasonable doubt that the defendant intended to do the act that resulted in the violation. See *Commonwealth* v. *Collier*, 427 Mass. 385, 389-390 (1998). See generally Instruction 6.720(4) of the Model Jury Instructions for Use in the District Court, *supra.*

[10]The judge's instruction regarding incidental contact was as follows:

"But in the case where someone is coming to Court, even though that's not accidental conduct — contact, they're allowed in those circumstances to be within a certain number of feet and to have incidental contact with the plaintiff in the case when they're in the courtroom and while they're in a — in a hearing. And the incidental contact as I said, alleged conduct may have been incidental to a legitimate lawful activity such as appearing in Court, the Commonwealth must prove beyond a reasonable doubt that the alleged violation was not incidental to that permitted activity. Conduct that is incidental to a legitimate and lawful activity is conduct which is connected to that activity, conduct which is purely or naturally a reasonable outgrowth of the necessary part of that legitimate lawful activity.

"So, if for example a person is subject to an abuse prevention order waited in the only public hallway of a courthouse before the start of a hearing, and the person protected by that order was waiting somewhere

In determining whether the inadequacy of the judge's instruction regarding accident created a substantial risk of a miscarriage of justice, we review the judge's final charge to the jury as a whole in the context of the totality of the evidence. See *Commonwealth* v. *Whitman*, 430 Mass. 746, 755 (2000). If the jury credited the victim's testimony that the defendant on leaving the court room stopped in front of the victim to tell her that "[r]estraining orders don't work," or that in the stairwell the defendant appeared to take a photograph of the victim with her cellular telephone and said that "[n]ow everyone will know

else, that conduct would be incidental to legitimate lawful activity of attending the Court hearing.

"Although there might be a stay away order in effect, on a no contact, that would be no violation of that order because the conduct was purely and natural and reasonable outgrowth of the scheduling of that hearing on that day.

"On the other hand, if the subject entered the public hallway and then intentionally stood directly next to the plaintiff, or waited for the plaintiff when the subject could have stood elsewhere, that would violate the order because it was not incidental or necessary to the lawful conduct.

"The Commonwealth may prove that the defendant's conduct was not incidental to lawful activity by proving that the alleged violation was not purely or naturally a reasonable outgrowth or necessary part of that legitimate lawful activity. Put another way, the Commonwealth must prove that the defendant's conduct was not a good faith attempt by the defendant to do with — to do that which was permitted. In deciding whether any conduct which violated the order you may consider any evidence bearing upon the nature and purpose of any conduct, the number of contacts over time, the length of the contact, and the substance and tenor of any statements made during that contact. You should consider all of the evidence in the case to decide whether any contact was made in good faith or a legitimate reason or whether that reason was merely a pretext or excuse for contacting and making contact, and making statements to the protected party.

"If the Commonwealth has proved beyond a reasonable doubt each of the elements of the offense, and also that the violation was not committed incidental to a legitimate lawful activity, you should return a verdict of guilty.

"If the Commonwealth has failed to prove beyond a reasonable doubt — it's always reasonable doubt, any of the elements of the offense or that the contact was not incidental to a legitimate lawful activity, you must return a verdict of not guilty."

who you are," the absence of an adequate instruction on accident would be inconsequential because no reasonable jury could have found those contacts with the victim to be accidental. Therefore, the inadequacy of the instruction on accident would matter here only if the jury found the defendant guilty solely because she violated the no contact provision of the order by being in close proximity to the victim in the stairwell after the victim left the court room. But if the jury had credited the defendant's testimony that she moved to the stairwell to avoid encountering the victim, the jury reasonably would have understood from the judge's instruction on incidental contact that the contact in the court house was incidental to the defendant's appearance at the court hearing, and therefore not in violation of the no contact order. Because, in the context of the evidence in this case, the adequate instruction on incidental contact cured any prejudice arising from the inadequacy of the instruction on accident, we conclude that there is no substantial risk that the inadequacy of the judge's instruction on accident may have materially influenced the verdict in this case, and therefore no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. at 13, quoting *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967) ("An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not 'materially influence[]' the guilty verdict").

3. *Absence of instruction on specific unanimity.* The defendant was charged with a single count of violating a restraining order but, in her closing argument, the prosecutor argued that there were two violations of the restraining order: the first, when the defendant was walking down the aisle to leave the court room, and the second, at the stairwell outside the court room. The defendant claims that a substantial risk of a miscarriage of justice arose from the judge's failure to instruct the jury that, to convict the defendant, they must unanimously agree as to the incident or incidents that constituted the violation.

"[I]t is beyond dispute that the jury verdict in a criminal trial . . . must be unanimous." *Commonwealth* v. *Berry*, 420 Mass. 95, 111 (1995), quoting *Commonwealth* v. *Hebert*, 379 Mass. 752, 754 (1980). "A general unanimity instruction informs the

jury that the verdict must be unanimous, whereas a specific unanimity instruction indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged." *Commonwealth* v. *Conefrey*, 420 Mass. 508, 512 (1995), quoting *Commonwealth* v. *Keevan*, 400 Mass. 557, 566-567 (1987). An instruction on specific unanimity is warranted "when, on a single charged offense, the prosecutor presents evidence of separate, discrete incidents, any one of which would suffice by itself to make out the crime charged. There, in order to find the defendant guilty of the charged offense, the jury must all agree as to at least one, specific incident." *Commonwealth* v. *Santos*, 440 Mass. 281, 284-285 (2003). See *Commonwealth* v. *Accetta*, 422 Mass. 642, 646 (1996) ("where there is evidence of separate incidents, each of which could warrant a guilty verdict, the jury must be instructed that specific unanimity is required at least as to one incident"). However, "[w]hen a single count is charged and where the spatial and temporal separations between acts are short, that is, where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, a specific unanimity instruction is not required." *Commonwealth* v. *Santos*, *supra* at 285, quoting *Commonwealth* v. *Thatch*, 39 Mass. App. Ct. 904, 905 (1995).

Here, the spatial and temporal separations between the two incidents were short. The two incidents were spatially separated by the short distance between the aisle of the court room and the stairwell outside the court room, and temporally separated by "probably not even a minute." Where there was no objection to the absence of an instruction on specific unanimity, we need not decide whether the judge could have or should have provided such an instruction in this case. It is sufficient that we conclude that the absence of such an instruction did not create a substantial risk of a miscarriage of justice.

*Conclusion.* Because we conclude there was no error that created a substantial risk of a miscarriage of justice, we affirm the defendant's conviction.

*Judgment affirmed.*